UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE LEWIS,<br><br>           Plaintiff,<br><br>     v.<br><br>WELSH, et al.,<br><br>           Defendants. | Case No. 1:19-cv-01468-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM AGAINST DEFENDANT WELSH AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF NO. 19)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Tyrone Lewis ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this action filed on October 17, 2019.

On April 22, 2020, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 12). The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint …; or b. Notify the Court in writing that he wants to stand on his complaint…." (Id. at 12). The Court also provided Plaintiff with applicable legal standards.

1

After being granted extensions of time, on July 6, 2020, Plaintiff filed his First Amended Complaint (ECF No. 19). Plaintiff's First Amended Complaint is now before this Court for screening. For the reasons that follow, the Court will recommend that this action proceed on Plaintiff's First Amendment Retaliation claim against defendant Welsh and that all other claims and defendants be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 8), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d

677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.     SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges as follows in his First Amended Complaint:

On October 26, 2018, Plaintiff was housed in C5-233 Level III at Tehachapi prison. At some time near 1:30 p.m., defendant Correctional Officer Welsh announced over a loudspeaker that it was dayroom time, and she began to unlock cell doors. Moments later, Plaintiff stepped out of his cell into the dayroom with a Kufi on his head, which is Islamic religious headgear.

Defendant Welsh yelled out over the loudspeaker, "no headgear in the dayroom." Plaintiff then approached the podium near the tower and told defendant Welsh that he is wearing religious headgear. Defendant Welsh then yelled at Plaintiff again and told him she does not care, no headgear in the dayroom when she is on.

Plaintiff then asked defendant Welsh for a CDCR-602 appeal. Defendant Welsh then motioned for Plaintiff to step outside so that she could talk to him. Once outside, defendant Welsh gave Plaintiff a stern ultimatum on whether to file a 602 against her. She told Plaintiff, "I'll make your life a living hell in here, and I can make your property disappear." Plaintiff removed his Kufi and went inside the dayroom without further discussion.

On October 29, 2018, Plaintiff filed a 602 appeal on issues concerning him not being able to wear his Kufi, which is part of his Islamic religious belief. The appeal bypassed the first level, and on November 21, 2018, was partially granted at the second level by Lt. K. Knowels.

After Plaintiff had his 602 appeal interview with Lt. Knowels, he returned to his housing building and began to wear his Kufi without being told to remove it in the dayroom. However, defendant Welsh had been off work for these few days.

On December 31, 2018, defendant Correctional Officer Garcia was working in the

tower of building 5.  Defendant Garcia noticed that Plaintiff was wearing his Kufi on his head.  Defendant Garcia then motioned for Plaintiff to come within hearing distance of the tower.  He then told Plaintiff, "[t]ake that shit off in my dayroom."  Plaintiff told defendant Garcia that Plaintiff was wearing religious headgear.  Defendant Garcia then yelled, "I don[']t care!  Take that shit off in my dayroom."  Plaintiff then removed his Kufi, feeling humiliated because he cannot wear his religious headgear, and that defendant Garcia was abusing his discretional power.

On December 31, 2018, Plaintiff filed another 602 appeal regarding issues of him not being able to practice his Islamic beliefs harassment free.  The appeal bypassed the first level.  Plaintiff was interviewed by Lt. Knowels on January 11, 2019.  During the interview Lt. Knowels asked Plaintiff, "why are you having these religious headgear problems with staff that work building 5 tower?"  Plaintiff stated, "I don[']t have any idea, I did nothing wrong or had any pass [sic] problems with officer Garcia."  At that time, Lt. Knowels concluded the interview by granting Plaintiff's 602 appeal and telling Plaintiff that he will talk to defendants Garcia and Welsh.

On the next day, in the morning, Plaintiff was released from his cell for dayroom.  Plaintiff entered the dayroom wearing his Kufi.  Defendant Welsh again yelled over the loudspeaker, "[t]ake it off Lewis!"  Plaintiff was confused due to the fact that his appeal was just granted by Lt. Knowels.  Plaintiff went to his cell to retrieve the granted 602 appeal and attempted to show two floor officers that his appeal was granted.  The officers told Plaintiff that he needed to show defendant Welsh.

Plaintiff showed defendant Welsh his granted 602 appeal that states he can wear his Kufi at any time.  Once defendant Welsh read the granted appeal she said, "what the fuck!?"  Defendant Welsh's statement was made more to herself than to Plaintiff.  Defendant Welsh handed Plaintiff back his 602 appeal without saying anything further.

Five to ten minutes later, defendant Welsh told Plaintiff over the loudspeaker to return to his cell in order to pack his property, because he is going to building 2.  At that time, when Plaintiff was told he was moving because defendant Welsh would not allow him to wear his

4

Kufi and practice his religion, Plaintiff felt humiliated and harassed because defendant Welsh saw that he had every right to practice his religion.

Plaintiff brings a First Amendment free exercise claim and a Fourteenth Amendment equal protection claim against defendants Welsh and Garcia.[1]

### III.   ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal

---

[1] Plaintiff alleges in his complaint that the Court has supplemental jurisdiction over his state law claims, but Plaintiff does not bring any state law claims.

5

connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  *Iqbal*, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B. First Amendment Right to Free Exercise of Religion

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion].  The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment.  A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (alteration in original) (citations and internal quotation marks omitted).  "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'"  *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).  "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'"  *Id.* (quoting *O'Lone*, 482 U.S. at 349).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria.  First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which ... are obviously shams and

absurdities and whose members are patently devoid of religious sincerity.  Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (citations and internal quotation marks omitted), *supplemented*, 65 F.3d 148 (9th Cir. 1995); *see also Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies).

Additionally, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones*, 791 F.3d at 1031.  "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 1031-32 (alterations in original) (citation and internal quotation marks omitted)

Courts in the Ninth Circuit have routinely held that the denial of a religious practice on a single isolated occasion does not constitute a "substantial burden" and thus does not violate the First Amendment.  *See, e.g.*, *Howard v. Skolnik*, 372 F. App'x 781, 782 (9th Cir. 2010) (summary judgment on free exercise claim was appropriate where the plaintiff's allegation of two incidents where prison staff interfered with his fasting did not amount to a substantial burden); *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) ("relatively short-term and sporadic" interference with religious exercise was not a substantial burden); *Pouncil v. Sherman*, 2018 WL 646105, at *3, 2018 U.S. Dist. LEXIS 15961, at *5-6 (E.D. Cal. Jan 31, 2018) (free exercise claim dismissed at screening because allegation of denial of meals for a single night of Ramadan did not present a substantial burden); *Murie v. Crossroads Corr. Ctr.*, 2017 WL 2265145, at *3, 2017 U.S. Dist. LEXIS 85863, at *4-6 (D. Mont. Feb. 24, 2017) (free exercise claim dismissed at screening because allegation that the plaintiff was not allowed to attend a sweat lodge on a single occasion did not present a substantial burden); *Stidhem v. Schwartz*, 2017 WL 6887139, at *4, 2017 U.S. Dist. LEXIS 215007, at *9-10 (D. Or. Oct. 23, 2017) (summary judgment granted on the plaintiff's free exercise claim because a less-than-

one-day suspension of the plaintiff's kosher diet did not amount to a substantial burden).

Plaintiff alleges that on October 28, 2018, and on January 12, 2019, defendant Welsh told Plaintiff to take his Kufi off while he was in the day room. Plaintiff also alleges that on December 31, 2018, defendant Garcia told Plaintiff to take his Kufi off while he was in the dayroom. Plaintiff alleges that Defendants violated his First Amendment free exercise rights when they told him to remove his Kufi while he was in the dayroom. (ECF No. 19, p. 7).

Based on Plaintiff's allegations, he was only prevented from wearing his Kufi while in the dayroom, and only on three occasions over a period of over two months. Under the case law discussed above, these short-term and sporadic denials were not a substantial burden on the practice of Plaintiff's religion. Accordingly, the Court finds Plaintiff has failed to state a claim for a violation of the First Amendment's free exercise clause.

### C. Equal Protection Clause

The equal protection clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v. California Dep't of Corr. & Rehab.,* 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, a plaintiff must show that the defendants intentionally discriminated against him based on his membership in a protected class, *Hartmann*, 707 F.3d at 1123 *Furnace*, 705 F.3d at 1030, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601-02 (2008), *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008), *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that his equal protection rights were violated when Defendants discriminated against him because of his Islamic beliefs. (ECF No. 19, p. 7). However, there are no facts alleged in the complaint suggesting that either defendant discriminated against

8

Plaintiff because of his religious beliefs. For example, there are no allegations suggesting that he was not able to participate in programming or other privileges based on his religious beliefs. Additionally, he has not alleged that others were permitted to wear headgear in the dayroom. In fact, Plaintiff alleges that defendant Welsh told him "no headgear in the dayroom."

Accordingly, the Court finds that Plaintiff has failed to state an equal protection claim.

### D. Retaliation

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"[T]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009).

Plaintiff alleges that he asked defendant Welsh for a CDCR-602 appeal. Defendant Welsh then motioned for Plaintiff to step outside so that she could talk to him. Once outside, defendant Welsh gave Plaintiff a stern ultimatum on whether to file a 602 against her. She told Plaintiff, "I'll make your life a living hell in here, and I can make your property disappear." Plaintiff removed his Kufi and went inside the dayroom without further discussion. Based on these allegations, the Court finds that Plaintiff's First Amendment retaliation claim should proceed past the screening stage.[2]

### IV.   RECOMMENDATIONS AND ORDER

The Court has screened the First Amended Complaint and finds that Plaintiff's First Amendment retaliation claim against defendant Welsh should proceed past the screening stage. The Court also finds that all other claims and defendants should be dismissed for failure to state

---

[2] Plaintiff did not list a First Amendment retaliation claim in the "Legal Claims" section of his complaint. However, construing Plaintiff's complaint liberally, it appears that Plaintiff is attempting to bring a retaliation claim against defendant Welsh. If Plaintiff is not attempting to bring a retaliation claim against defendant Welsh, he should state as such in his objections to these findings and recommendations.

a claim upon which relief may be granted.

The Court does not recommend granting further leave to amend.  Plaintiff has alleged that he was only prevented from wearing his Kufi while in the dayroom, and only on three occasions over a period of over two months.  This is insufficient to state a First Amendment free exercise claim.  Additionally, there is no indication in the First Amended Complaint that Plaintiff was discriminated against because of religious beliefs.  Finally, the Court already provided Plaintiff with an opportunity to amend his complaint with the benefit of relevant legal standards, and Plaintiff filed his First Amended Complaint with the guidance of those legal standards.  Therefore, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's First Amendment retaliation claim against defendant Welsh; and
2. All other claims and defendants be dismissed for failure to state a claim upon which relief may be granted.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   **August 7, 2020**                    /s/ Erica P. Grosjean
                                                                   UNITED STATES MAGISTRATE JUDGE